[Doc. No. 47]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ROBERT R. OLESON          :
                          :
         Plaintiff,       : Civil No. 09-5706 (NLH/JS)
                          :
     v.                   :
                          :
BUREAU OF PRISONS, et al.,:
                          :
         Defendants.      :

## OPINION AND ORDER

This matter is before the Court on the motion for appointment of counsel [Doc. No. 47] filed by pro se plaintiff, Robert R. Oleson.  Plaintiff is currently incarcerated and argues that counsel should be appointed because he is "a paraplegic, limiting his access to the law library as it is over a half mile to the library, and he only has ten minutes to get there via a circuitous route."  Motion ¶ 7.[1]  Plaintiff contends that he has "filed some 140 exhibits with the Court, with more to come, demonstrating the fact that his Constitutional rights were violated and continue to be violated by the staff at F.C.I. Fort Dix, New Jersey."  Id. ¶ 9. Additionally, plaintiff argues, "[t]he staff at F.C.I. Fort Dix are

---

[1]Plaintiff further argues the Court should appoint counsel to represent him because he is "unable to afford counsel; the issues in this case are complex; plaintiff has a limited knowledge of the law; the case contains several Constitutional violations and legal claims asserted by plaintiff; [and] [the] case involves medical issues that may require expert testimony." Motion ¶¶ 1-5.

1

making a concerted effort to thwart [his] efforts to prosecute his case." Id. ¶ 10. No opposition has been filed to plaintiff's motion. The Court has exercised its discretion to decide plaintiff's motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, plaintiff's motion is DENIED.

Plaintiff filed a Complaint on November 1, 2009 [Doc. No. 1] asserting that Fort Dix officials violated his constitutional rights by failing to replace his wheelchair, failing to relocate him to a unit wherein the unit team is located on the first floor, removing his shower shoes, blanket and other items from his cell, requiring him to wait in the outside dining line in a wheelchair in the rain, and deleting visitors from his visitor list. See Memorandum Opinion, The Honorable Noel L. Hillman, Doc. No. 27 at 1. On January 14, 2010, Judge Hillman dismissed plaintiff's complaint without prejudice for plaintiff's failure to exhaust administrative remedies. [Doc. No. 8].[2] On May 10, 2010 this Court denied as moot [Doc. No. 17] plaintiff's Motion to Compel and Motion for Appointment of Counsel [Docs. Nos. 11, 15] without prejudice. On plaintiff's subsequent appeal to the United States Court of Appeals for the Third Circuit, Judge Hillman's August 18,

---

[2] On August 18, 2010 Judge Hillman granted plaintiff's Motion for Reconsideration [Doc. No. 9] of his January 14, 2010 Order, but nevertheless dismissed plaintiff's complaint without prejudice because of plaintiff's alleged failure to exhaust administrative remedies. [Doc. No. 28].

2

2010 Order was vacated and the case was remanded for further proceedings. [Doc. No. 40]. Upon remand, plaintiff filed the present "Motion to Appoint Pro Bono Counsel" [Doc. No. 47], along with his "Memorandum in Support of Motion to Appoint Pro Bono Counsel." [Doc. No. 53].

Plaintiff's present Motion to Appoint Pro Bono Counsel reiterates many of the allegations he made in his original complaint and subsequent filings with the court. Plaintiff's complaint contains nine (9) general allegations. The Court will endeavor to summarize those allegations here, so as to comprehensively address the present motion.

First, plaintiff alleges the staff at F.C.I. Fort Dix (hereinafter "staff") refuse to provide the "proper forms" and requests that blank administrative forms be provided. See Doc. No. 47-1 (hereinafter "Brief") at 2-3. Plaintiff argues the withholding of the administrative remedy forms amounts to a First Amendment violation. See Doc. No. 53 (hereinafter "Supplemental Brief" or "Supp. Brief") at 1.

Second, plaintiff argues the staff stole his prescription eyeglasses, refused to return them, and ignored his request for new glasses. Brief at 6-7.[3] Plaintiff asserts that "[d]epriving [him]

---

[3] Plaintiff argues the delay in receiving new glasses, which lasted over a year, caused him to suffer "daily headaches...exacerbating his impaired vision...[and causing him] anxiety attacks worrying about [his ability to] see all the 'pot holes', cracks, misaligned cement slaps [sic], and defective

3

of his prescription eyeglasses violated his Eighth Amendment Right [sic] to be free of cruel and unusual punishment...." Supp. Brief at 3.

Third, plaintiff claims defendant Thompson "took some legal papers from [p]laintiff's bed and disposed of them." Id. at 4; see also Brief at 6. Plaintiff argues this amounts to a constitutional violation, because "when prison officials seize and destroy legal papers, it clearly states a claim of denial of access to the courts . . . The right of access to the courts is substantive rather than procedural." Supp. Brief. at 5 (citing Wright v. Newsome, 795 F.2d 964 (11th Cir. 1986)).

Fourth, plaintiff complains of a "typographical error on [his] security/designation data form." Brief at 10.[4] Plaintiff argues that the prison officials' failure to correct the error demonstrates the officials' "harassment and vindictive behavior in retaliation against Plaintiff," in violation of the First Amendment. Supp. Brief at 6.

Fifth, plaintiff lists grievances concerning inoperable and inaccessible handicap toilets throughout the F.C.I. Fort Dix facility, including a "handicap stall" that plaintiff claims was

---

approaches in the roadways and walkways...." Id. at 9.

[4]Plaintiff claims he has submitted "at least 16 documents" requesting that a "typo" on the aforementioned form be corrected, "as it states that Plaintiff has a warrant for his arrest from the Country of Mexico." Id.

used to store mops, buckets, brooms and scrub brushes during an inspection by prison officials. See Brief at 14-22; see also Supp. Brief at 7-8. Plaintiff maintains that "[t]he denial of access to handicap toilets violates the Eighth Amendment, the [F]ourteenth Amendment, and Title II of the ADA." Id. at 7.

Sixth, plaintiff complains of what he terms his "quest for a serviceable wheelchair." Brief at 23. Plaintiff claims he was assigned "an old dilapidated wheelchair that was designed for indoor use only." Id. After requesting a new chair on various occasions, plaintiff alleges the "frame cracked and the right foot board broke off." Id. Plaintiff asserts that he has been retaliated against for complaining about the condition of his wheelchair,[5] and argues that he has received conflicting information from Health Services Administrators regarding the status of a new wheelchair that was ordered for him (to replace his "for indoor use only" chair with a chair that is allegedly suitable for the premises). Id. at 26-28. According to plaintiff, "[d]enying [him] a serviceable wheelchair" results in a violation of the First, Eighth and Fourteenth Amendments. See Supp. Brief at 8.

Seventh, plaintiff complains of inaction relating to his

---

[5]Plaintiff alleges that after requesting assistance from his "Counselor/inmate liaison, Mr. Thompson," Thompson "came into [p]laintiff's room and stole his eyeglasses, shower shoes, legal papers and blanket." Id. at 24.

requests for a transfer to a different facility.  Plaintiff states he has sought a transfer because there are "no rehabilitation programs for stroke patients at FCI Fort Dix."[6]  Brief at 34; Supp. Brief at 9.  Plaintiff has also sought a transfer to obtain better educational opportunities.  Brief at 34-35.  Plaintiff states that following his several requests, "no action was taken to get [him] transferred to a medical facility where he could get proper treatment constituting deliberate/wanton indifference, and [p]laintiff asserts this was vindictive behavior on the part of the aforementioned defendants in retaliation for [p]laintiff filing his Civil Action and naming [defendants]."  Supp. Brief at 10.

Eighth, plaintiff alleges that several of the walkways, roadways and ramps at the facility are in violation of the Code of Federal Regulations, amounting to an Eighth Amendment violation.  Id. at 13-14.

Ninth, plaintiff alleges "wanton indifference" by "[Corrections Officers] Espanoza (phonetic), Santos, Picarro (phonetic) et al," where they ordered plaintiff and other prisoners to "sit beneath large trees, in pools of water, in metal wheelchairs, in the rain, on numerous occasions, under threat of going to the 'hole' (SHU)."  Id. at 14.

---

[6] Plaintiff is seeking to be transferred to the "Federal Medical Center in Lexington, Kentucky."  Brief at 34.

Plaintiff seeks appointment of legal counsel pursuant to 28 U.S.C. § 1915(e), under which the court may request an attorney to represent an indigent plaintiff in a civil action. The statute provides in relevant part that:

> (1) [t]he court <u>may</u> request an attorney to represent any person unable to afford counsel. (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(A) the allegation of poverty is untrue; or (B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

§ 1915(e) (emphasis added). However, the appointment of counsel under this provision is a privilege, not a statutory or constitutional right of the litigant. <u>Parham v. Johnson</u>, 126 F.3d 454, 456-57 (3d Cir. 1997). Moreover, a court's power to appoint counsel pursuant to § 1915(e) lies in the sole discretion of the court. <u>Id.</u> at 457. <u>See also</u> <u>Tabron v. Grace</u>, 6. F.3d 147, 155 (3d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1196 (1994).

As a preliminary matter, the court is required to determine whether the "plaintiff's claim . . . has some merit in fact and law." <u>Tabron</u>, 6 F.3d at 155 (citations omitted). If the court finds the action is not frivolous and has merit, then several factors are to be taken into consideration:

> (1)  plaintiff's ability to present his or her own defense;
> (2)  the complexity of the legal issues;

> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses, and;
> (6) whether the plaintiff can attain and afford counsel on his or her own behalf.

Tabron, 6 F.3d at 155-56, 157 n.5.  This list is not exhaustive, nor is any one factor determinative.  Id. at 157.  See also Lasko v. Watts, 373 Fed.Appx. 196, 200 (3d Cir. 2010), cert. denied, 2010 WL 3053871 (2010); Spruill v. Gillis, 328 Fed.Appx. 797, 800 (3d Cir. 2009); Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). Courts should also consider practical constraints, such as "the ever-growing number of prisoner civil rights actions filed each year in federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers willing to undertake such representation."  Tabron, 6 F.3d at 157.  These factors ensure that courts will only appoint counsel in non-frivolous matters.  Parham, 126 F.3d at 461.  Thus, courts should only consider appointment of counsel where a plaintiff's case appears to have merit and a weighing of the aforementioned factors favors appointment.  Id.

Judge Hillman reviewed the threshold question of the merits of plaintiff's claims following the Third Circuit's remand of the case [Doc. No. 43] and found, "[d]ismissal of the Complaint is not required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A at this

8

time....This Court will dismiss the Bureau of Prisons as defendant and order service and the filing of a responsive pleading by the remaining defendants." Order ¶¶ 5-6. Because it has been determined that plaintiff's complaint meets the threshold merit requirement, consideration of the Tabron/Parham factors will now be addressed.[7] See Tabron, 6 F.3d at 155-56, 157 n.5; Parham, 126 F.3d at 457.

The first factor for consideration regarding plaintiff's request for pro bono counsel is his ability to present his own case. In evaluating this factor, courts should consider the plaintiff's education, literacy, prior work experience, prior litigation experience and ability to understand English. Parham, 126 F.3d at 459 (citing Tabron, 6 F.3d at 156); Montgomery, 294 F.3d at 501. If the plaintiff is a prisoner, the court should consider the constraints placed upon him or her by confinement, including the availability of typewriters, photocopiers, telephones and computers. Tabron, 6 F.3d at 156; Krider v. Heron, No. 06-3231

---

[7] It is important to note that given the early stage of litigation, "the factual and legal issues 'have not been tested or developed by the general course of litigation, making [a number of factors] of Parham's test particularly difficult to evaluate.'" Mitchell v. Attorney Gen., No. 05-882 (RBK), 2005 WL 1106467, at *1 (D.N.J. Apr. 27, 2005) (quoting Chatterjee v. Philadelphia Federation of Teachers, No. 99-4122, 2000 WL 1022979, at *1 (E.D.Pa. July 18, 2000) (stating that unlike Parham, which concerned a directed verdict ruling, and Tabron, which involved summary judgment adjudication, a plaintiff's claims asserted in a complaint and motions "have barely been articulated" and are difficult to evaluate)).

9

(NLH), 2007 WL 2300709, at *2 (D.N.J. Aug. 3, 2007). Plaintiff maintains that he should be appointed counsel because he is "a paraplegic, limiting his access to the law library as it is over a half mile to the library, and he only has ten minutes to get there via a circuitous route."[8] Motion ¶ 7. Further, plaintiff asserts that he is "a recovering stroke victim which has left him with a diminished mental capacity, dyslexia and ADDS[9] among other medical conditions." Motion ¶ 15.[10]

While plaintiff's lack of legal training may hinder his ability to present his case, this situation is not unique to many

---

[8] In addition to his general difficulty in accessing the law library, plaintiff also notes that his "access to the law library is further limited during inclement weather. Rain storms cause the yard to be closed. Snowstorms makes [sic] it impossible for wheelchair bound prisoners to go anywhere until the roadways, walkways, ramps and approaches are cleared of snow." Motion ¶ 8.

[9] Plaintiff included this acronym without additional clarification. The Court is not familiar with "ADDS," nor is the Court aware of what "medical condition" plaintiff is referencing through use of the acronym.

[10] In detailing his need for appointed counsel, plaintiff notes that he has been receiving legal assistance from another inmate who is "going home in March of 2011." Supp. Brief at 16. See also Motion ¶ 14 ("Plaintiff's 'jailhouse' lawyer is being transferred after the end of the year (2010) and without his assistance, and that of appointed counsel, Plaintiff will be further handicapped."). Plaintiff did not cite to any factual support for this statement such as an affidavit. However, even if plaintiff's claim is true it would not change the Court's ruling. Plaintiff submitted a Brief [Doc. No 62, "Reply to Response to Motion for Leave to Supplement Plaintiff's 42 U.S.C. 1983"] as late as March 18, 2011, which evinces no significant change in his ability to represent himself. The Court assumes plaintiff prepared the Reply and not his "jailhouse lawyer."

pro se litigants. Krider, supra, at *2. Further, while plaintiff's health condition may put some burden on him that distinguishes his position from other plaintiffs, the Court is skeptical that he is significantly limited from visiting the law library in view of the extensive case law he cited in his filings with the Court. In addition, plaintiff has presented a well articulated and reasoned complaint, and has submitted all documents in type. See, e.g., "Plaintiff's Statement of Facts in Support of his Motion for Appointment of Counsel" [Doc. No. 47-1] (numbering fifty-six (56) typed pages of factual allegations and legal analysis, including extensive case law citations). See also "Memorandum of Law in Support of Plaintiff's Motion for Appointment of Counsel" [Doc. No. 53] (providing an example of a well reasoned, eighteen (18) page typed submission). Plaintiff's filings evidence a level of sophistication not typically present in pro se submissions. For these reasons, plaintiff has thus far demonstrated his ability to represent himself in this litigation. See Krider, supra, at *2. See also Price v. Shineski, No. 09-2492 (FSH/MAS), 2010 WL 1573920, at *1 (D.N.J. April 16, 2010) (finding that plaintiff demonstrated his capacity to adequately present his own case through his complaint and motion to appoint counsel, which clearly and articulately presented the legal claims, facts and circumstances of his case).

Further, plaintiff's status as a paraplegic does not

necessarily warrant appointment of counsel.  In Logan v. United States, No. 96-55042, 1996 WL 717087, at *1-2 (9th Cir. Dec. 6, 1996)(citing Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991)), a pro se plaintiff contended that he was negligently placed in a private custodial facility ill-equipped to care for his needs as a paraplegic awaiting trial.  The plaintiff also contended that the district court erred by denying his motion for appointment of counsel.  The Ninth Circuit affirmed the district court's finding that the plaintiff's articulation of the claims was satisfactory and that any need for evidentiary hearings or discovery did not render the case complex.

Plaintiff's case is also factually distinguishable from Maclin v. Freake, 650 F.2d 885 (7th Cir. 1981) (abrogated by Farmer v. Haas, 990 F.2d 319 (7th Cir. 1993)(discarding Maclin's multifactor test in favor of a more straightforward approach to deciding motions for appointment of pro bono counsel)).[11]  In Maclin, the court was faced with a state prisoner who was a paraplegic and who, according to the limited record presented, had received no physical therapy for his condition over a period of some eleven (11) months since he entered prison.  See id.  The court ruled that since the plaintiff was in no position to investigate facts germane to his

---

[11] Despite the Seventh Circuit's abrogation of Maclin, the Third Circuit has continued to cite the case approvingly.  See Tabron v. Grace, 6 F.3d 147, 155-156 (3d Cir. 1993).

12

complaint, and he had not demonstrated a workable knowledge of the legal process, the district court should have granted his request for appointed counsel. See id. Unlike the plaintiff in Maclin, plaintiff has demonstrated his ability to investigate and articulate the facts germane to his complaint, in addition to demonstrating a relatively sophisticated knowledge of the legal process.

The second factor for consideration is the complexity of the legal issues presented. Where the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis. See Parham, 126 F.3d at 459; Tabron, 6 F.3d at 156. However, comprehension alone does not equal the ability to translate understanding into presentation. Parham, 126 F.3d at 459; Krider, supra, at *2. Although the ultimate issue may be comprehensible, the Court must appreciate the complexity of the discovery involved. Id. At this stage, the complexity of the issues raised in the case has not prevented plaintiff from sufficiently pursuing his claims. Further, it appears that no procedural hurdles have hindered plaintiff's efforts to represent himself. See Lasko, 373 Fed. Appx. at 201. In fact, plaintiff convinced the Third Circuit to reverse the District Judge's ruling. See Oleson v. Bureau of Prisons, No. 10-3650, 2011 WL 37809 (3d Cir. Jan. 6, 2011) (per curiam). In addition, the law applicable to plaintiff's claims is

13

not especially complex.  Since it has not yet been shown that plaintiff will have any significant difficulty regarding the complexity of the issues or discovery in the case, the second factor weighs against the appointment of counsel.

The third factor for consideration is the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation.  It has been noted that "courts should consider a prisoner's inability to gather facts relevant to the proof of his claim." Montgomery, 294 F.3d at 503 (citing Tabron, 6 F.3d at 156).  "Courts should further consider that 'it may be difficult for indigent plaintiffs to understand the complex discovery rules' in investigating their claims." Id. (citing Parham, 126 F.3d 460).  At this stage plaintiff has not shown it will be unduly difficult for him to obtain the relevant institutional records, which should be reasonably available.  Plaintiff can also take depositions if necessary.  Thus, it does not appear discovery will be particularly burdensome.  Unlike cases where documents are missing and where defendants are resistant in responding to discovery requests, this situation does not presently exist in the case.  See, e.g., Montgomery, 294 F.3d at 503-504 (finding this factor in favor of granting pro bono counsel where missing key records prevented plaintiff from building a sufficient case through document requests and plaintiff encountered significant resistance from defendants in responding to his

14

discovery motions, including defendants' failure to respond to plaintiff's interrogatories). For these reasons, the third factor weighs against appointment of counsel.

The fourth factor for consideration is whether a case is likely to turn on credibility determinations. Under this factor, the Court should consider whether the case is largely based on the word of one side against the word of the other side. Parham, 126 F.3d at 460. "Thus, when considering this factor, courts should determine whether the case was solely a swearing contest." Id. Because plaintiff's claims are to a large extent premised on the failure to provide institutional services (i.e. medical equipment, handicap-accessible facilities), at the moment it appears unlikely the case will turn on credibility determinations.[12] Thus, the fourth factor weighs against appointment of counsel.

The fifth factor for consideration is whether the case will require the testimony of expert witnesses. Appointment of counsel may be warranted where the case will require testimony from expert witnesses. Tabron, 6 F.3d at 156. Plaintiff asserts that "[t]his case involves medical issues that may require expert testimony." Motion ¶ 5. However, plaintiff does not describe what claim or

---

[12] The Court notes that plaintiff has alleged retaliatory tactics by the defendants. See Motion ¶¶ 10-13. Although proving or defending such allegations may require credibility determinations to be made, they do not, in themselves, warrant appointment of counsel.

15

subject matter will necessitate such expert testimony. Since the substance and necessity of expert testimony has not yet been established, the fifth factor weighs against appointing pro bono counsel.

The sixth factor for consideration is whether plaintiff can retain and afford counsel on his own behalf. Parham, 126 F.3d at 461. Plaintiff is currently incarcerated and, based on his representations, he cannot afford his own attorney. See Motion ¶ 1. The Court accepts this as true, thus the sixth factor weighs in favor of granting plaintiff's motion.

Based upon the Tabron/Parham factors and the facts as currently presented to the Court, and for the reasons discussed above, a majority of factors weigh against granting plaintiff's motion. In the Court's view, the most significant factors to consider at this time are that plaintiff has adeptly handled the litigation and this case has not yet been shown to be especially complex. In addition, it does not appear that plaintiff's physical condition materially interferes with his ability to pursue his case. Therefore, plaintiff's motion will be denied. However, this Order is entered without prejudice to plaintiff's right to re-file his request for counsel if warranted by relevant developments. Accordingly, for all the foregoing reasons,

IT IS hereby ORDERED this 6th day of June 2011 that

plaintiff's Motion for Appointment of Pro Bono Counsel is DENIED.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge